# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RICHARD SALKIN,**<br><br>      **Plaintiff,**<br><br>      v.<br><br>**JOHN LABROSSE, FRANCES COGELJA, LANCE POWELL, CARLOS VELEZ, WENDY MARTINEZ,** *in their individual and official capacities*, **HACKENSACK PUBLIC SCHOOL DISTRICT, CITY OF HACKENSACK, PHILIP SWIBINSKI,** *and* **VISION MEDIA MARKETING, INC.,**<br><br>      **Defendants.** | Civ. No. 2:18-13910 (WJM) (MF)<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

      Plaintiff Richard Salkin, the former attorney for the Board of Education of Hackensack, New Jersey, brings this Section 1983 action against Hackensack Mayor John Labrosse ("Labrosse"); Hackensack School Board Members Frances Cogelja ("Cogelja"), Lance Powell ("Powell"), and Carlos Velez ("Velez"); campaign manager Wendy Martinez ("Martinez"); Vision Media Marketing ("Vision") and its principal Philip Swibiniski ("Swibiniski"); the Hackensack Public School District ("HPSD"); and the City of Hackensack ("the City"). Plaintiff alleges that during the 2018 campaign for three open positions on the HPSD school board, Defendants defamed Plaintiff and made statements about his performance and political affiliations that resulted in his constructive discharge from his position in violation of the First Amendment.

      This matter comes before the Court upon two motions to dismiss pursuant to Federal Rule of Civil Procedure12(b)(6) filed by the City, HPSD, Cogelia, Powell, and Velez ("Moving Defendants"), ECF Nos. [34] and [35] ("Motions"). There was no oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Motions are **GRANTED.**

1. **BACKGROUND**

    **A. Factual Background**

   The following facts are derived from the Amended Complaint, ECF No. [28], and are accepted as true for purposes of the Motions.

   Plaintiff served as attorney for the Board of Education of HPSD ("BOE Attorney") from 2005 to 2018. ECF No. [28] ¶ 15. During his tenure, the Board of Education re-appointed Plaintiff annually through a non-political process. *Id.* ¶¶ 16–17. According to Plaintiff, the position of BOE Attorney is non-partisan, and Plaintiff did not "serve any significant role in policy making." *Id.* ¶¶ 17–18. Instead, his role focused on "handling labor matters; representing HPSD with regard to grievances; advising staff members; handling personnel issues; representing HPSD in contractual issues and tuition issues; the bidding processes for vendors, and; the enforcement of HPSD policies." *Id.* ¶¶ 19–20. For this work, Plaintiff was compensated $150 per hour from 2005 to 2017 and $160 per hour from 2017 to 2018. He billed HPSD between $130,000 to $153,000 each year. *Id.* ¶¶ 22–23. During his last year of service, Plaintiff alleges he was paid approximately $13,000 each month. *Id.* ¶ 59.

   While Plaintiff held the BOE attorney position, he expressed political support for certain mayors, including former Hackensack Mayor Jack Zisa and local Hackensack council members that supported Zisa. *Id.* ¶¶ 29–30. In 2013, Defendant Labrosse was elected mayor of Hackensack, defeating those for whom Plaintiff had previously expressed support. *Id.* ¶¶ 31–32. While Plaintiff alleges that he did not support Defendant Labrosse or the other council members that were elected with him, Plaintiff continued to serve in his role as BOE Attorney. *Id.* ¶ 32.

   Five years later in 2018, HPSD held an election for three positions on its school board that precipitated the claims in this lawsuit. Plaintiff alleges that while the school board positions are "non-partisan" and "non-political," *id.* ¶ 34, Defendants Cogelja, Powell, and Velez (together, the "Individual Defendants") were "affiliated with a 'Labrosse Team' " supported by the current Hackensack mayor. *Id.* ¶ 38. During their campaigns, Plaintiff's legal fees, his responsibilities as BOE Attorney, and his relationship with former mayors became the subject of campaign flyers and social media posts. Specifically Defendant Martinez, the Individual Defendants' campaign manager, requested information from the City regarding Plaintiff's billable hours and purchase orders for his legal services. *Id.* ¶ 39. Plaintiff alleges that the Individual Defendants, either acting individually or through Defendants Vision and Swibinski, issued several public statements in the two weeks leading up to the April 17, 2018 elections that were "false, malicious, and defamatory." *Id.* ¶ 40. These statements are detailed below.

   On April 5, 2018, the Individual Defendants issued a press release "demanding that Plaintiff reimburse [the Hackensack Public Schools] for a portion of his fees" and stating that "Plaintiff raised his compensation by 50%, overbilled taxpayers by thousands of dollars, [] broke the state law . . . by working without a contract," "increased [his

compensation] from $95,000 to $144,000," and "believes he is above the law because he actually controls the Board of Education through his relationship with the Zisa family." *Id.* ¶¶ 43–44 (the "Press Release"). In the Press Release, Defendant Cogelja stated that Plaintiff had "overbilled taxpayers by $13,000" and "was charging a higher rate than allowed." *Id.* ¶ 45. Although Plaintiff received a letter the following day from HPSD clarifying that the school district had not overpaid him, *id.* ¶ 48, the information found in the Press Release was reprinted on April 7, 2018 by InsiderNJ.com. *Id.* ¶ 49.

The next day, on April 8, 2018, the Individual Defendants published the following statement on Facebook:

> Did you know that School Attorney Richard Salkin (a longtime Zisa family lawyer) and School Board President (and Zisa candidate) Jason Nunnermacker have a blatant conflict of interest involving hundreds of thousands of dollars?
>
> Did you know that School Attorney Salkin has ruled that there is 'nothing wrong' with school employees doing political work for Zisa candidates – on school time and on school property?
>
> Did you know that Salkin overbills the school district by tens of thousands of tax dollars . . . ?

*Id.* ¶ 50 (the "Facebook Post"). The complaint alleges that the substantive content of the Facebook Post was "contemporaneously" reprinted in a campaign advertisement by "Labrosse and the Labrosse Team." *Id.* ¶ 52. Finally, on election day the Individual Defendants, Vision, or Swibinski distributed a campaign flyer which stated:

> Kick the Zisas Out of Our Schools!
>
> The Board of Education has long been controlled by Jack and Ken Zisa through School Attorney Richard Salkin and Board President Jason Nunnermacker – two longtime Zisa family cronies. Last year they allowed school employees to do political work for Zisa city council candidates - on taxpayer time and on school property. Nunnermacker's law firm collected hundreds of thousands of dollars representing Salkin's wife. At the same time, Salkin raised his fees by over 50% in just two years and overbilled the schools by thousands of dollars . . . .

*Id.* ¶¶ 41, 54 ("Campaign Flyer"). In addition to the Press Release, Facebook Post, and Campaign Flyer, the Individual Defendants stated "throughout the campaign" that Plaintiff "would not be permitted to remain as BOE Attorney should [the Individual Defendants] take control of [the] school board" and that the Individual Defendants planned to "get rid of all people affiliated with Zisa," including Plaintiff. *Id.* ¶ 55. An

3

unnamed school board member further told Plaintiff that if the Individual Defendants prevailed, Plaintiff would be terminated. *Id.* ¶ 57.

The Individual Defendants won the election. *Id.* ¶ 54. Plaintiff resigned effective April 23, 2018, six days after the election. *Id*. ¶ 58. Plaintiff alleges that this resignation was "forced" and constituted a constructive discharge because he (1) was defamed by the Individual Defendants; (2) was told by an unnamed board member that he would be terminated if the Individual Defendants prevailed; and (3) could no longer serve because the situation was "intolerable and untenable." *Id.* ¶¶ 58, 60–61. Several months later Defendant Cogelja stated at a school board meeting that this lawsuit was "legal harassment" and made several unspecified statements that Plaintiff alleges to be false. *Id.* ¶ 61. Based on these allegations, Plaintiff asserts causes of action for defamation, violations of Section 1983, and violations of the New Jersey Civil Rights Act.

### B. Procedural History and the Instant Motions

Plaintiff initially filed his complaint on September 14, 2018 and filed an Amended Complaint on January 22, 2018. ECF Nos. [1] & [28]. Defendants Labrosse, Swibinski, and Vision filed answers, ECF Nos. [30] & [33],[1] and the City, HPSD, and the Individual Defendants filed motions to dismiss. ECF Nos. [34] & [35].[2] As relevant to the instant motions, the claims against the Moving Defendants are as follows:[3]

- Count I: First Amendment Retaliation under 42 U.S.C.§ 1983 against the City and HPSD;

- Count II: First Amendment Retaliation under 42 U.S.C.§ 1983 against the Individual Defendants;

- Count III: Violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6–2 against the City, HPSD, and the Individual Defendants.

In a joint motion to dismiss, HPSD and the Individual Defendants separately argue for dismissal of the counts against them. The Individual Defendants first argue that the claims against them should be dismissed because none of the Individual Defendants acted under color of state law as required under Section 1983 and the NJCRA. ECF No. [35-1] at 8–16. Second, the Individual Defendants argue that Plaintiff's claims are barred by qualified immunity because as of the filing of the complaint, there was no controlling authority or robust consensus that termination based on political affiliation is unlawful for a position that encompasses policy making or confidential role. *Id.* at 17. Third, Cogelja argues that claims related to her September 2018 statements to the school board are entitled to absolute legislative immunity, and, in any event, did not involve any threat of termination and occurred long after Plaintiff was no longer the BOE Attorney. *Id.* at 35–

---

[1] On June 12, 2019, Defendant Labrosse filed a motion for judgment on the pleadings as to Counts II and III. ECF No. [42]. As of entry of this Opinion, that motion is not yet ripe.
[2] Defendant Martinez answered the initial complaint on December 12, 2018. ECF No. [23]. The docket does not reflect an answer to the Amended Complaint filed by Defendant Martinez.
[3] The Individual Defendants do not move to dismiss Count IV (Defamation).

36. As to the claims against Defendant HPSD, HPSD argues that Plaintiff has failed to allege a constitutional violation and articulate a custom or policy that resulted in any alleged constitutional violation as required under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). *Id.*

In a separate brief, the City argues that Plaintiff fails to state a claim for First Amendment retaliation because patronage dismissals are permitted in policy-making roles such as the BOE Attorney. ECF No. [34-1]. The City also argues that Plaintiff fails to allege sufficient facts to demonstrate "outrageous, coercive, and unconscionable conduct" to constitute constructive discharge, fails to articulate a policy or practice attributable to the City, and fails to allege a claim for declaratory relief. *Id.* at 17–19.

Plaintiff opposes by arguing that he has sufficiently pled his retaliation claim because (1) political affiliation is not a proper basis for termination as BOE Attorney, (2) the complaint contains sufficient facts to support his claim for constructive discharge, and (3) the Individual Defendants operated under state law because they eventually were elected to local office. ECF No. [39]. Plaintiff further argues that the Individual Defendants are not entitled to qualified immunity, that Plaintiff has sufficiently pled that HPSD engaged in a policy or custom of retaliatory termination based on political affiliation, and that the City has waived any arguments under *Monell*. *Id.* The Moving Defendants filed replies. ECF Nos. [40] & [41]. The Motions are now ripe for decision.

## 2. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint if a plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing the complaint must be dismissed. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The court does not accept "legal conclusions" as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 3. DISCUSSION

### A. Claims Against the Individual Defendants

To allege a *prima facie* case under Section 1983, a plaintiff must demonstrate that a person, acting under color of state law, deprived him or her of a federal right. *Marran*

*v. Marran*, 376 F.3d 143, 155–56 (3d Cir. 2004) (citing *Berg v. County of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000)).  Courts have typically analyzed the requirements of Section 1983 in two parts, which may be addressed in either order: whether plaintiff has alleged a violation of a right secured by the Constitution and the laws of the United States and whether the alleged deprivation was committed by a person acting under color of state law.  *Sprauve v. W. Indian Co. Ltd.*, 799 F.3d 226, 229 (3d Cir. 2016) (quoting *Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (cleaned up).

The requirement under the second prong that the person act "under color of state law" confines Section 1983 liability to "those who deprive persons of federal constitutional or statutory rights 'under color of any statute, ordinance, regulation, custom, or usage' of a state."  *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (quoting *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005)).  "[M]ere[] private conduct, no matter how discriminatory or wrongful" does not fall within the scope of Section 1983.  *Sullivan*, 526 U.S. at 49 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991 (1982)).

A defendant acts under "color of state law" if:

> (1) [] the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) [] the private party has acted with the help of or in concert with state officials; and (3) [] the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Kach*, 589 F.3d at 646).  The court must determine if there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (quoting *Leshko*, 423 F.3d at 339).  While requiring a factual inquiry, this analysis is properly undertaken on a motion to dismiss.  *Sprauve*, 799 F.3d at 229.

Plaintiff alleges the Individual Defendants violated his First Amendment rights when they constructively discharged him from his position as BOE Attorney.  According to Plaintiff, the Individual Defendants made statements on the campaign trail about his support of a former mayor of Hackensack, his billing practices as BOE Attorney, and their intent to remove Plaintiff from his position if elected.  However, each of the statements that allegedly contributed to his constructive discharge were made while Individual Defendants were private citizens running for elected office.  Plaintiff alleges no actions or statements by the Individual Defendants after they were elected or took office.  Because the Individual Defendants acting alone cannot act under color of state law while on the campaign trail, the Court finds that Plaintiff has not stated a claim under Section 1983 against the Individual Defendants.  *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990), *aff'd*, 502 U.S. 21 (1991) (holding candidate for office not a state actor); *Acosta v. Democratic City Comm.*, 288 F. Supp. 3d 597, 636 (E.D. Pa. 2018) (same).

6

Accordingly, the claims against the Individual Defendants must be dismissed.[4]

Plaintiff argues that the Individual Defendants' statements are converted from non-actionable statements by private citizens to actions taken "under color of state law" once the Individual Defendants were elected. But the cases cited by Plaintiff to relate to statements or actions by local or state government officials while they were in office, not candidates for that office. *Mirabella v. Villard*, 853 F.3d 641 (3d Cir. 2017) (finding plaintiffs had stated a claim for First Amendment retaliation against the chairperson of the Board of Supervisors who acted under color of state law when issuing a "no contact" statement); *West v. Atkins*, 487 U.S. 42 (1988) (finding physician under contract with state prison to provide medical services to inmates acted under color of state law). In fact, the Third Circuit has explicitly stated that a candidate for office is not a state actor while campaigning. *Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990), *aff'd,* 502 U.S. 21 (1991) (finding no action under color of state law on a Section 1983 retaliation claim related to an alleged conspiracy between a private citizen and a candidate for office who eventually took that office). The Court thus finds this argument unpersuasive.

Finally, the Court notes that the Amended Complaint states that the Individual Defendants were part of a "Labrosse Team" and that "Labrosse and the Labrosse Team" reprinted a portion of the Facebook Post as part of a campaign flyer. ECF No. [28] ¶¶ 52–53. However, Plaintiff does not argue in opposition that the Individual Defendants acted under color of state law because the complained-of statements were made "in conjunction with an official which was then a state actor." *Melo*, 912 F.2d at 638–39 (citations omitted). Rather, Plaintiff only argues that the Individual Defendants' eventual election converts the complained-of statements into state action. ECF No. [39] at 20. "When neither of the parties who allegedly conspired is a state official, there is no state actor to supply even a colorable basis for investing the private actor with a state mantle, even if one of the parties later becomes a state official." *Melo*, 912 F.2d at 639. Accordingly, based on the arguments presented to the Court, the claims against the Individual Defendants must be dismissed.

### B. Claims Against HPSD and the City of Hackensack

"Local governing bodies may be sued directly under [Section] 1983 for monetary, declaratory, or injunctive relief where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Marran v. Marran*, 376 F.3d 143, 155–56 (3d Cir. 2004) (quoting *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690 (1978) (modifications omitted)). In addition, "although the touchstone of the [Section] 1983 action against a government body is an allegation that official policy is responsible for a

---

[4] Plaintiff argues that the analysis under NJCRA is identical to the analysis under Section 1983 and does not separately brief any arguments in his opposition related to his NJCRA claim. ECF No. [39] at 1 n.1. Accordingly, for the same reasons stated here, Plaintiff's NJCRA claims are also dismissed. *Endl v. New Jersey*, 5 F. Supp. 3d 689, 697 (D.N.J. 2014) (holding that "NJCRA is construed nearly identically to Section 1983").

deprivation of rights protected by the Constitution, local governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91.

Thus, a Section 1983 claim against a local governing body may be made in two ways. *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). As to the "policy" approach, a plaintiff must demonstrate that a "decisionmaker possessing final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Id.* Under the "custom" approach, a plaintiff must demonstrate that a course of conduct, which though not authorized by law, constituted a permanent and well-established practice of the state officials rendering that custom law-like. *Id.* To demonstrate custom, a plaintiff must also show proof of knowledge and acquiescence by the decisionmaker. *Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d Cir. 2007).

Here, Plaintiff alleges that "Defendants established, created, and implemented the policies of the City of Hackensack and Hackensack Public School District," and that "HPSD and [the] City [] developed and maintained a number of deficient policies and/or customs which caused the deprivation of Plaintiff's constitutional rights." ECF No. [28] ¶¶ 67, 71. The Amended Complaint further alleges that "Defendant HPSD's and City of Hackensack's policies and customs encouraged the Individual Defendants, and others, to believe that they could violate the constitutional rights of Plaintiff with impunity and with the explicit or tacit approval of HPSD and/or the City of Hackensack." *Id.* ¶ 72.

These allegations are inadequate to state a claim for Section 1983 liability against HPSD and the City. Beyond the Amended Complaint's conclusory statements noted above, Plaintiff does not allege any specific "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [HPSD or the City's] officers." *Marran*, 376 F.3d at 155. Nor does Plaintiff allege any custom which constitutes a permanent and well-established practice of HSPD or the City that caused his allegedly unconstitutional constructive discharge.[5] Instead, Plaintiff argues that as candidates for positions on the Board of Education the Individual Defendants were municipal decisionmakers who "created a custom and practice of political patronage through their promises to purge the school district of Zisa supporters, should [the Individual] Defendants take office." ECF No. [39] at 26. But when these alleged statements were made, the Individual Defendants were not decisionmakers of HPSD or the City, and any statements made by the Individual Defendants while campaigning are not officially adopted policies or customs of the HPSD or the City. The Court thus finds that Plaintiff has failed to state a claim against

---

[5] Plaintiff argues in opposition that the City failed to cite *Monell* in its Moving Brief and has therefore waived this argument. Although inartfully presented without citation to *Monell*, the City argues "Plaintiff . . . contends 'Defendants established and implemented the policies of the City of Hackensack and HPSD,' yet does not say which policies it refers." ECF No. [34-1] at 18. The Court does not consider this argument waived as Plaintiff urges.

HPSD and the City under Section 1983 and that these claims must be dismissed.[6]

## 4. DISMISSAL WITH PREJUDICE

The Moving Defendants request dismissal with prejudice. ECF Nos. [34-1] & [35-1]. Generally, a plaintiff shall be granted leave to amend unless further amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114 (3d Cir. 2002). The Court is not convinced that, based on the allegations in the Amended Complaint, there is no set of facts that could state a claim against the Moving Defendants. *Ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 252 (3d Cir. 2016). Accordingly, the Court denies the request to dismiss with prejudice and will permit Plaintiff to amend his complaint should he so choose.

## 5. CONCLUSION

For the reasons stated above, the Moving Defendants' Motions to Dismiss are **GRANTED**. An appropriate Order follows.

**Dated: June 13, 2019**

                                              */s/ William J. Martini*
                                        **WILLIAM J. MARTINI, U.S.D.J.**

---

[6] As with the NJCRA claims against the Individual Defendants, for the same reasons Plaintiff's NJCRA claims against HPSD and the City are also dismissed. *Endl*, 5 F. Supp. 3d at 697.